IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| CRAFT INTERNATIONAL, LLC | § | CASE NO. 14-32605-BJH-11 |
| | § | |
| DEBTOR. | § | |

| | | |
|---|---|---|
| TAYA KYLE | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | ADVERSARY NO. 14-03115-BJH |
| | § | |
| CRAFT INTERNATIONAL, LLC | § | |
| | § | |
| Defendant. | § | |

HEARING BRIEF REGARDING TAYA KYLE'S REQUEST
FOR PRELIMINARY INJUNCTIVE RELIEF

Dated: September 29, 2014

Respectfully submitted,

**NELIGAN FOLEY LLP**

By:


/s/ Patrick J. Neligan, Jr.
Patrick J. Neligan, Jr.
Texas State Bar No. 14866000
pneligan@neliganlaw.com
Seymour Roberts, Jr.
Texas State Bar No. 17019150
sroberts@neliganlaw.com

325 N. St. Paul, Suite 3600
Dallas, Texas 75201
Telephone: (214) 840-5300
Facsimile: (214) 840-5301

**COUNSEL FOR THE DEBTOR**

## TABLE OF CONTENTS

I.    Preliminary Statement ............................................................................................ 1

II.   Factual Background ............................................................................................... 2

    A.   A Brief Synopsis of the Life of Chris Kyle ............................................... 2

    B.   The Debtor's Founding and Business Operations ..................................... 3

III.  Legal Argument .................................................................................................... 6

    A.   The Doctrine of Standing .......................................................................... 6

    B.   Taya Has No Standing to Enjoin the Debtor's Use of 5.11'S Images ........ 8

    C.   Taya Lacks Standing Under Texas Property Code § 26.005 ..................... 9

    D.   Taya Has No Cause of Action Under Chapter 26 of the Texas Property Code Regarding 5.11's Images that are on the Debtor's Website .................................. 10

    E.   Taya Has No Cause of Action Under Chapter 26 of the Texas Property Code Regarding the Debtor's Use of Chris' Name and Images on the Debtor's Website Because Chris Was a Public Figure Whose Life Story Was in the Public Domain due to His Own Extensive Self-Publicizing Activities .......................................... 11

    F.   In the Alternative, the Debtor did not Misappropriate Chris' Name, Likeness and Image under Chapter 26 of the Texas Property Code ............................................... 17

    G.   Taya Is Not Entitled to Injunctive Relief ................................................. 21

IV.  Conclusion ......................................................................................................... 22

V.   Prayer ................................................................................................................. 22

## TABLE OF AUTHORITIES

### Cases

*Adler v. Conde Nast Publications, Inc.*
 643 F.Supp. 1558 (S.D.N.Y. 1986) ................................................................. 14, 15

*Aligo v. Time-Life Books, Inc.*
 1994 WL 715605 (N.D.Cal. 1994) ....................................................................... 21

*Allen v. Wright*
 468 U.S. 737 (1984)............................................................................................... 6

*Bank of America, N.A. v. Fulcrum Enterprises, LLC*
 2014 WL 2069466 (S.D.Tex. 2014) ...................................................................... 7

*Bender v. Williamsport Area Sch. Dist.*
 475 U.S. 534 (1986).............................................................................................. 6

*Braun v. Flynt*
 726 F.2d 245 (5th Cir. 1984), cert. denied.......................................................... 13

*Busch v. Viacom International, Inc.*
 477 F.Supp.2d 764 (N.D.Tex. 2007) ................................................................... 15

*Cibolo Waste, Incorporated v. City of San Antonio*
 718 F.3d 469 (5th Cir. 2013) ...................................................................... 7, 8, 9

*Corabi v. Curtis Publishing Co.*
 441 Pa. 432, 273 A.2d 899 (1971) ...................................................................... 15

*Crane v. Napolitano*
 920 F.Supp.2d 724, 731 (N.D.Tex. 2013) ................................................6, 8, 9, 10

*Curtis Publishing Co. v. Butts*
 388 U.S. 130 (1967)...................................................................................... 13, 15

*Elk Grove Unified Sch. Dist. v. Newdow*
 542 U.S. 1, 11 (2004)..................................................................................... 7, 8

*Elvis Presley Enterprises, Inc. v. Capece*
 950 F.Supp. 783 (S.D.Tex. 1996) ........................................................................ 19

*Ensley v. Cody Res., Inc.*
 171 F.3d 315 (5th Cir. 1999) .............................................................................. 7

*Fairchild v. Liberty Independent School District*
597 F.3d 747 (5th Cir. 2010) ......................................................................... 7, 8, 9

*Falls v. Sporting News Publishing Co.*
714 F.Supp. 843 (E.D.Mich. 1989, affirmed without opinion,
899 F.2d 1221 (6th Cir. 1999) ......................................................................... 14

*Gertz v. Robert Welch, Inc.*
418 U.S. 323 (1974) ......................................................................... 13, 14

*Henley v. Dillard Department Stores*
46 F.Supp.2d 587 (N.D.Tex. 1999) ......................................................................... 20

*Hotze v. Sebelius*
991 F.Supp.2d 864 (S.D.Tex. 2014) ......................................................................... 8, 9

*Hutchinson v. Proxmire*
443 U.S. 111 (1979) ......................................................................... 13

*In re Jones*
445 B.R. 677 (Bankr. N.D.Tex. 2011) ......................................................................... 12

*Jacobellis v. Ohio*
378 U.S. 184 (1964) ......................................................................... 14

*Kimbrough v. Coca Cola/USA*
521 S.W.2d 719 (Tex.Civ.App.-Eastland 1975, writ ref'd n.r.e.) ......................................................................... 19

*Kiper v. BAC Home Loans Servicing, L.P.*
884 F.Supp.2d 561 (S.D.Tex. 2012), affirmed, 534 Fed.Appx. 266 (5th Cir. 2013) ......................................................................... 7

*Knudson v. Kansas Gas and Electric Co.*
248 Kan. 469, 807 P.2d 71 (1991) ......................................................................... 15

*Ladany v. William Morrow & Co.*
465 F.Supp. 870 (S.D.N.Y. 1978 ......................................................................... 21

*Lerman v. Flynt Distributing Co., Inc.*
745 F.2d 123 (2nd Cir. 1984), cert. denied ......................................................................... 15

*Lewis v. Knutson*
699 F.2d 230 (5th Cir. 1983) ......................................................................... 9

*Loeb v. Globe Newspaper Co.*
489 F.Supp. 481 (D.Mass. 1980) ......................................................................... 14

*Loeb v. New York Times Communications Corp.*
497 F.Supp. 85 (S.D.N.Y. 1098) ........................................................................................ 14

*Maradiaga v. Intermodal Bridge Transport, Inc.*
899 F.Supp.2d 551 (N.D.Tex. 2012) .................................................................................. 7, 9

*Matter of Commonwealth Oil Refining Co., Inc.*
805 F.2d 1175 (5th Cir. 1986), cert. denied, 483 U.S. 1005 (1987) ........................................ 23

*Matthews v. Wozencraft*
15 F.3d 432 (5th Cir. 1994) ........................................................................ 15, 16, 19, 20

*McClure v. Ashcroft*
335 F.3d 404 (5th Cir. 2003) ............................................................................................ 7

*Mugworld, Inc. v. G.G. Mark & Associates, Inc.*
563 F.Supp.2d 659 (E.D.Tex. 2007), affirmed, 351 Fed.Appx. 885 (5th Cir. 2009) .......... 7, 8, 9

*Namath v. Sports Illustrated*
48 A.D.2d 487, 371 N.Y.S.2d 10 (N.Y.A.D. 1st Dept. 1975) ................................................ 22

*O'Brien v. Pabst Sales Co.*
124 F.2d 167 (5th Cir. 1942), cert. denied, 315 U.S. 823 (1942) ............................................ 17

*O'Donnell v. CBS, Inc.*
782 F.2d 1414 (7th Cir. 1986) .......................................................................................... 15

*Pooley v. National Hole-In-One Association*
89 F.Supp.2d 1108 (D.Ariz. 2000) ................................................................................ 21, 22

*Preston v. Martin Bregman Productions, Inc.*
765 F.Supp. 116 (S.D.N.Y. 1991) .................................................................................... 21

Rosenblatt v. Baer
*383 U.S. 75 (1966)* ........................................................................................................ *14*

*Rybachek v. Sutton*
761 P.2d 1013 (Alaska 1988)............................................................................................ 15

*San Antonio Express News v. Dracos*
922 S.W.2d 242 (Tex.App.-San Antonio 1996, no writ) .............................................. 7, 13, 14

*Servicios Azucareros De Venezuela, C.A. v. John Deere Thibodeaux, Inc.*
702 F.3d 794 (5th Cir. 2012) ........................................................................................ 7, 9

*St. Paul Fire & Marine Insurance Company v. Labuzan*
   579 F.3d 533 (5th Cir. 2009) ......................................................................... 8, 9

*Stewart v. International Association of Machinists and Aerospace Workers*
   2014 WL 1681565  (S.D. Tex. 2014) ............................................................. 6

*Stolz v. KSFM 102 FM*
   30 Cal.App.4th 195,35 Cal.Rptr.2d 740 (1994), cert. denied ....................... 15

*Tavoulareas v. Piro*
   817 F.2d 762 (D.D.C. 1987), cert. denied........................................................ 13

*The Inclusive Communities Project, Inc. v. Texas Department of Housing
   and Community Affairs*
   749 F.Supp.2d 486 (N.D.Tex. 2010)............................................................... 7, 8

*Trotter v. Jack Anderson Enters.*
   818 F.2d 431 (5th Cir. 1987) ......................................................................... 16

*Vinci v. American Can Company*
   69 Ohio App.3d 727, 591 N.E.2d 793 (Ohio App. 8th Dist. 1990)............................. 22

*Warner v. Kansas City Star Co.*
   726 S.W.2d 384 (Mo.Ct.App. 1987)............................................................... 15

*Warth v. Seldin*
   422 U.S. 490 (1975)...................................................................................... 7, 8

*Whitehurst v. Showtime Networks, Inc.*
   2009 WL 3052663  9E.D.Tex. 2009) ............................................... 11, 15, 19, 20

*Whitmore v. Arkansas*
   495 U.S. 149 (1990)..................................................................................... 8

*Wyble v. Gulf South Pipeline Company, L.P.*
   308 F.Supp.2d 733 (E.D.Tex. 2004 ............................................................. 7, 8

*Yeager v. Cingular Wireless LLC*
   673 F.Supp.2d 1089 (E.D.Cal. 2009)........................................................... 21, 27

## Statutes

11 U.S.C. §§ 101-1532 ................................................................................................ 1
418 U.S. at 323 ........................................................................................................ 12
418 U.S. at 345 ........................................................................................................ 12
418 U.S. at 352 ........................................................................................................ 12
418 U.S. at 353 ........................................................................................................ 12
469 U.S. 883 (1984) ................................................................................................ 11
471 U.S. 1054 (1985) .............................................................................................. 13
484 U.S. 870 (1987) ................................................................................................ 12
516 U.S. 820 (1995) ................................................................................................ 13

## Other Authorities

Texas Property Code § 26.002 ................................................................................ 11
Texas Property Code § 26.003 ................................................................................ 11
Texas Property Code § 26.004 ................................................................................ 12
Texas Property Code § 26.005 ................................................................................ 10
Texas Property Code § 26.005(a)(2 ........................................................................ 10
Texas Property Code § 26.005(c) ............................................................................ 11
Texas Property Code § 26.011 ........................................................................... 12, 19

Craft International, LLC (the "Debtor"), the debtor and debtor in possession in the above-captioned bankruptcy case (the "Bankruptcy Case") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended (the "Bankruptcy Code"), and the defendant in the above captioned adversary proceeding (the "Adversary Proceeding"), files this Hearing Brief (the "Brief") regarding the request of Taya Kyle ("Taya"), the plaintiff in this Adversary Proceeding, for preliminary injunctive relief as requested in her *Plaintiff's Original Complaint and Application for Temporary and Permanent Injunctions* [D.E. 1] (the "Complaint") which is scheduled to be heard on Monday, October 6, 2014 and, in support, states as follows:

## I.    **Preliminary Statement**

1.      The Debtor's website has pictures of Chris Kyle ("Chris") and mentions his name. His widow, Taya, filed this Adversary Proceeding, to compel the Debtor to remove those references to Chris and to recoup her alleged damages. She is not entitled to her requested relief, injunctive, monetary or otherwise, for several reasons.

- **Taya Lacks Standing.** The pictures of Chris are owned by a clothing manufacturer that licensed those pictures to the Debtor. Chris transferred all of his rights in those pictures to the clothing manufacturer, who then gave its consent for the Debtor to use them. Taya has suffered no injury in fact because she has no rights in those pictures. And she is attempting to enforce the rights of a third party, the clothing manufacturer. Furthermore, Taya does not own a majority of the property rights she is attempting to enforce, and lacks standing for that reason as well.

- **Chris Lived in the Public Domain.** Chris was a public figure. His feats on the battlefield were legendary, and he capitalized on his fame by writing a *New York Times* bestselling autobiography. He was interviewed throughout the media: television, radio, newspapers and magazines. He went on book signing tours and posed with fans for pictures. His life story was in the public domain. The facts about Chris on the Debtor's website were simply an acknowledgement that he co-founded the Debtor and that the Debtor's skull logo incorporates certain events in Chris' life; all points that the public already knew, due to Chris's own extensive self-publicizing activities.

- **Incidental Use.** Chris' name does not appear next to or endorse any of the merchandise that is sold on the Debtor's website. The pictures of Chris all show him wearing the

apparel of the clothing manufacturer, not any of the Debtor's merchandise. The references to Chris are merely historical. The use of Chris' pictures and name on the Debtor's website is strictly incidental.

- **Taya is Not Entitled to Injunctive Relief.** Taya cannot satisfy any of the injunctive relief factors.

2. This Adversary Proceeding is a power play by Taya to deny the Debtor of its very own history and to further attempt to disable the Debtor's business operations going forward. Upon information and belief, Taya is promoting another logo, the Chris Kyle frog logo, which is in competition with the Debtor's skull logo.[1] She is using this litigation as a business ploy to enhance her new logo's economic position in the marketplace.

## II.  Factual Background

### A.  A Brief Synopsis of the Life of Chris Kyle[2]

3. Chris was a United States Navy SEAL. He was the most lethal sniper in American military history, with 255 confirmed kills. Chris served 4 tours in Iraq, during which he survived 6 IED attacks, 3 gunshot wounds and 2 helicopter crashes. SEALs would sit at base camp telling stories about serving with "The Legend." Chris was even the topic of conversation for the enemies. For his deadly track record as a marksman during his deployment in Ramadi, the insurgents named him Shaitan Ar-Ramadi (The Devil of Ramadi) and even put a $20,000 bounty on his head that was later increased to $80,000.[3]

4. For all of Chris' heroics, he was awarded the fourth highest commendation for his acts of heroism, acts of merit, and/or meritorious service in the combat zone. Chris holds 2

---

[1]    See www.chriskylefrog.com.

[2]    Many of the facts set forth in this and other sections of this Brief are taken from the *Plaintiff's Original Petition, Application For Order Requiring Inspection of Craft's Books and Records, Application For Temporary Restraining Order and Temporary and Permanent Injunctive Relief & Application For Receiver* (the "State Court Petition") that Taya filed to initiate a lawsuit against the Debtor, Craft International Risk Management, LLC, Steven Young and Bo French, Cause No. DC-13-14996 in the 14th Judicial District Court of Dallas County, Texas, a copy of which is attached as **Exhibit 1**.

[3]    State Court Petition, Exhibit 1, ¶ 12, p. 4.

Silver Stars, 5 bronze stars with valor, 2 Navy and Marine Corps Achievement Medals, and 1

Marine Corps Commendation.  He was also awarded the Grateful Nation Award by the Jewish

Institute For National Security Affairs.[4]

5.     Chris was honorably discharged from the Navy in 2009 and moved his family

from California to Texas, with his wife, Taya, and their 2 children.  He remained in the spotlight

after leaving the Navy whether it was by writing the *New York Times* bestselling autobiography

*American Sniper*, going shooting with Texas Governor Rick Perry or developing FITCO Cares

Foundation, a non-profit organization that created the Heroes Project to provide, among other

things, free in-home fitness equipment to in-need veterans.[5]

6.     On February 2, 2013, Chris was shot and killed by a fellow veteran who Chris had

purportedly taken to a gun range to help him with post-traumatic stress disorder.[6]

**B.     The Debtor's Founding and Business Operations**

7.     In addition to his extra-curricular activities, Chris co-founded the Debtor, which is

a tactical training company for the US military and law enforcement communities.  The Debtor is

a consulting and training services provider offering a wide range of services and training to

federal, state and local customers.  The Debtor specializes in providing turnkey mission solutions

to ensure complete operation success.[7]  The Debtor now provides professional consulting and

management solutions in addition to its military training.[8]

8.     Chris was an employee of the Debtor.  A copy of his Employment Agreement

with the Debtor is attached as **Exhibit 2**.  The Debtor's skull logo incorporates certain events of

---

[4]      State Court Petition, **Exhibit 1**, ¶ 13, pp. 4-5.
[5]      State Court Petition, **Exhibit 1**, ¶ 14 p. 5.
[6]      State Court Petition, **Exhibit 1**, ¶ 20, p. 6.
[7]      State Court Petition, **Exhibit 1**, ¶ 15, p. 5.
[8]      State Court Petition, **Exhibit 1**, ¶ 16, p. 5.

HEARING BRIEF REGARDING TAYA KYLE'S REQUEST FOR
PRELIMINARY INJUNCTIVE RELIEF – Page 3

80686v.2

Chris' life and service, but mainly was created to honor his fallen teammates.[9]   A copy of that

logo is attached as **Exhibit 3**.   As part of SEAL Team 3, Chris and his fellow teammates painted

similar skulls on their gear in order to strike fear in the enemy.   The crosshair symbolizes Chris'

time spent on a sniper rifle and is also in the form of a Templar cross to symbolize faith.   The

crosshair is in the right eye to honor fellow SEAL Ryan Job, who was critically wounded when

he was shot in the right eye while on deployment to Iraq in 2006.   Following the successful

mission by Navy SEALs of freighter Captain Richard Phillips on Easter morning in 2009, Ryan

Job was asked by a local reporter if he thought using Navy SEALs against Somali pirates was

overkill.   His response was "despite what your mama told you, violence does solve problems."

Ryan Job passed away in September 2009 following complications during reconstructive

surgery.   The Debtor's skull logo was created as a daily reminder of all of the sacrifices that his

teammates made.[10]

9.      This story behind the Debtor's skull logo, and Chris' involvement with it, appears

on the Debtor's website.   A copy of that language is attached as **Exhibit 4**.   The Debtor's website

also mentions that:   (a) Chris co-founded the Debtor:   (b) he was one of the top snipers in the

history of the American Armed Forces; (c) he was the author of the *New York Times* number one

bestselling book *American Sniper:   The Autobiography of the Most lethal Sniper in U.S. Military

History*, upon his discharge in 2009.   A copy of that language is attached as **Exhibit 5**.   Chris

recounted the story behind the Debtor's skull logo in *American Sniper* on p. 368, a copy of

which is attached as **Exhibit 6**.   In addition, the Debtor has stationary which has its skull logo on

the front, and the story of the skull logo on the back.   Chris wrote hundreds of thank you letters

using this stationary.   A copy of this stationary is attached as **Exhibit 7**.

---

[9]        State Court Petition, **Exhibit 1**, ¶ 17, p. 5.
[10]       State Court Petition, **Exhibit 1**, ¶ 18, p. 6.

10.    The Debtor owns its skull logo.[11]

11.    5.11, Inc. ("5.11") is a manufacturer of gear, apparel and products that enhance the safety, accuracy, speed and performance of law enforcement, military and firefighting professionals.  The Debtor entered into a Marketing Agreement (the "Marketing Agreement") with 5.11 under which 5.11 would operate and maintain a website e-store located on the Debtor's website to sell 5.11 products, some of which would be branded with the Debtor's marks.  A copy of the Marketing Agreement is attached as **Exhibit 8**.

12.    In pursuit of the Marketing Agreement, 5.11 took pictures of certain of the Debtor's employees wearing 5.11's apparel.  Those pictures appear on the Debtor's website.  Before 5.11 took those pictures, the Debtor's employees in the pictures, including Chris, all signed a Release (the "Release") giving 5.11 exclusive ownership of the pictures.  The pertinent language in the Release is as follows:

> I hereby grant 5.11, Inc. . . . **permission to use my likeness in photography**, video, animation, or illustration (collectively, "Images") and any statement or endorsement, including my name (collectively, "Testimonials"), **in any and all media for any and all uses, including, without limitation, marketing and promotional purposes**.  I understand and agree that **these Images** and Testimonials **are the exclusive property of 5.11** and I release, waive, and disclaim any right, title, and interest in, and any rights of inspection or approval with respect to, the Images and Testimonials.  In addition, I release, waive, and disclaim any right, title, and interest to royalties or other compensation arising or related to 5.11's use of the Images and Testimonials.

> \* \* \*

> . . . . I agree that **this Release shall be binding upon my heirs, successors, assigns and personal representatives without regard to whether it is expressly acknowledged in any instruments of succession or assignment**. . . . (emphasis added)

A copy of Chris' Release is attached as **Exhibit 9**.

---

[11]    State Court Petition, Exhibit 1, ¶ 19, p. 6.

**HEARING BRIEF REGARDING TAYA KYLE'S REQUEST FOR PRELIMINARY INJUNCTIVE RELIEF – Page 5**

13. 5.11 gave the Debtor permission to use 5.11's Images, which were the pictures that 5.11 took of the Debtor's employees wearing 5.11's gear, for the promotion of the Debtor's services. This permission is in the form of a written contract (the "License") entitled Permission to Use Images, a copy of which is attached as **Exhibit 10**. This contract was a non-exclusive, non-transferable (without the right of sub-license), royalty-free, and revocable License. Some of these Images of 5.11 were pictures of Chris, and they appear on the Debtor's website. A copy of these pictures are attached as **Exhibit 11**. Every single picture of Chris that appears on the Debtor's website is one of 5.11's Images.

### III.     Legal Argument

#### A.     The Doctrine of Standing

14. Federal courts are courts of limited jurisdiction and they only have " . . . the power that is authorized by Article III of the Constitution and statutes enacted by Congress pursuant thereto."[12] Article III of the Constitution dictates that federal courts are limited "to adjudicating actual 'cases' and 'controversies.'"[13] Standing is a threshold issue that defines the limits of a federal court's power to hear and adjudicate cases.[14] For the most part, a plaintiff's injury should relate to her own rights and not the rights of a third party.[15]

15. Standing concentrates on the party trying to get her complaint heard before a federal court, not on the issues she wants to have ruled on. Standing deals with "the issue of whether the plaintiff is entitled to have the court decide the merits of the dispute or particular

---

[12]   Crane v. Napolitano, 920 F.Supp.2d 724, 731 (N.D.Tex. 2013) ("Crane"), citing Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986).

[13]   Crane, 920 F.Supp.2d at 731-732, citing Allen v. Wright, 468 U.S. 737, 750 (1984) ("Allen").

[14]   Stewart v. International Association of Machinists and Aerospace Workers, 2014 WL 1681565 at * 2 (S.D. Tex. 2014) ("Stewart"). Bank of America, N.A. v. Fulcrum Enterprises, LLC, 2014 WL 2069466 at * 3 (S.D.Tex. 2014) ("BoA"). See also Warth v. Seldin, 422 U.S. 490, 498 (1975) ("Warth"); and McClure v. Ashcroft, 335 F.3d 404, 408 (5th Cir. 2003).

[15]   Wyble v. Gulf South Pipeline Company, L.P., 308 F.Supp.2d 733, 741-742 (E.D.Tex. 2004 ("Wyble").

issues."[16]  Every plaintiff must have standing.[17]  And standing must exist at the time that the

action is filed.[18]

16.     Standing has two components:  (a) Article III or constitutional standing, which

enforces the Constitution's case or controversy requirement; and (b) prudential standing, which

encompasses judicially self-imposed limits on the exercise of federal jurisdiction.[19]  Article III

standing has 3 requirements:  (a) an injury in fact; (b) that is fairly traceable to the actions of the

defendant; and (c) that will be redressed by a favorable decision.[20]

17.     For Article III standing, the injury in fact is an invasion of a legally protected

interest which is (a) concrete and particularized and (b) actual and imminent, not conjectural or

hypothetical.[21]  The injury must be concrete both qualitatively and temporally.  Consequently,

allegations of possible future harm do not meet this requirement.  A threatened injury must be

"certainly impending" to qualify as an injury in fact.[22]

18.     The second Article III standing factor requires proof of a causal connection

between the injury in fact and the complained of conduct.  The injury must be fairly traceable to

---

[16]    Maradiaga v. Intermodal Bridge Transport, Inc., 899 F.Supp.2d 551, 561 (N.D.Tex. 2012) ("Maradiaga"),
       citing Ensley v. Cody Res., Inc., 171 F.3d 315, 319 (5th Cir. 1999).  Cibolo Waste, Incorporated v. City of
       San Antonio, 718 F.3d 469, 473 (5th Cir. 2013) ("Cibolo"), citing Elk Grove Unified Sch. Dist. v. Newdow,
       542 U.S. 1, 11 (2004) ("Elk Grove").  Servicios Azucareros De Venezuela, C.A. v. John Deere
       Thibodeaux, Inc., 702 F.3d 794, 800 (5th Cir. 2012) ("Servicios").  Mugworld, Inc. v. G.G. Mark &
       Associates, Inc., 563 F.Supp.2d 659, 664 (E.D.Tex. 2007), affirmed, 351 Fed.Appx. 885 (5th Cir. 2009)
       ("Mugworld").
[17]    Cibolo, 718 F.3d at 473.
[18]    Maradiaga, 899 S.Supp.2d at 561.
[19]    Cibolo, 718 F.3d at 473.  Kiper v. BAC Home Loans Servicing, L.P., 884 F.Supp.2d 561, 570 (S.D.Tex.
       2012), affirmed, 534 Fed.Appx. 266 (5th Cir. 2013) ("Kiper").  The Inclusive Communities Project, Inc. v.
       Texas Department of Housing and Community Affairs, 749 F.Supp.2d 486, 495 (N.D.Tex. 2010)
       ("Inclusive").  Fairchild v. Liberty Independent School District, 597 F.3d 747, 754 (5th Cir. 2010)
       ("Fairchild").  See also, Elk Grove, 542 U.S. at 11-12; Warth, 422 U.S. at 498.
[20]    St. Paul Fire & Marine Insurance Company v. Labuzan, 579 F.3d 533, 539 (5th Cir. 2009) ("St. Paul").
       Hotze v. Sebelius, 991 F.Supp.2d 864, 873 (S.D.Tex. 2014) ("Hotze").  Fairchild, 597 F.3d at 754.
       Mugworld, 563 F.Supp.2d at 664.
[21]    Wyble, 308 F.Supp.2d at 741.  Crane, 920 F.Supp.2d at 733.  Cibolo, 718 F.3d at 473.  Inclusive, 749 F.3d
       at 495.
[22]    Wyble, 308 F.Supp.2d at 741, citing Whitmore v. Arkansas, 495 U.S. 149, 158 (1990).

the defendant and not the result of the independent action of a third party that is not before the court.[23] For the third Article III standing factor, it must be likely, not just speculative, that the injury will be redressed by a decision in the plaintiff's favor.[24]

19.     In addition to the Article III requirements of standing, there are also prudential limitations on standing which are whether: (a) the plaintiff's grievance falls within the zone of interests protected by the statutory provision relied on in the lawsuit; (b) the complaint raises abstract questions or generalized grievances more properly addressed by the legislative branch; and (c) **the plaintiff asserts her own legal rights and interests, not the legal rights and interests of third parties.**[25] The prudential limitations on standing are judicially self-imposed.[26]

20.     The party invoking federal jurisdiction has the burden of proof to demonstrate that all of the standing requirements are met.[27] Because Taya is the plaintiff in this Adversary Proceeding and is invoking federal jurisdiction, the burden to prove all of the standing factors is on her.

**B.     Taya Has No Standing to Enjoin the Debtor's Use of 5.11's Images**

21.     In this Adversary Proceeding, Taya seeks, in part, to enjoin the Debtor's use of the pictures of Chris that are on the Debtor's website. All of those pictures are the exclusive property of 5.11. Chris transferred the entirety of his property rights in those pictures to 5.11 in the Release. Therefore, neither Chris nor his decedent's estate has any rights to those pictures. Those rights belong to 5.11, and only 5.11. If the Debtor inappropriately used the Images or has

---

[23]     Wyble, 308 F.Supp.2d at 742, citing Allen, 468 U.S. at 753.
[24]     Wyble, 308 F.Supp.2d at 742
[25]     St. Paul, 579 F.3d at 539. Maradiaga, 899 F.Supp.2d at 561. Hotze, 991 F.Supp.2d at 873-874. Mugworld, 563 F.Supp.2d at 664.
[26]     Fairchild, 597 F.3d at 754. Cibolo, 718 F.3d at 474, citing Lewis v. Knutson, 699 F.2d 230, 236 (5th Cir. 1983) ("[T]he constitutional limitation requiring an injury to satisfy the case or controversy requisite goes to the court's jurisdictional power to hear the case, while the prudential limitation goes to the court's administrative discretion to hear the case.").
[27]     Crane, 920 F.Supp.2d at 734. Hotze, 991 F.Supp.2d at 874. Servicios, 702 F.3d at 800.

no right to use the Images, which the Debtor vehemently denies, then any resulting injury is an injury to 5.11, not Taya. That means that with respect to the Debtor's use of the Images, Taya cannot prove, and can never prove, that she has suffered an injury in fact, which is a requirement of Article 11 standing.

22.     Because Taya cannot satisfy Article III standing, there is no need to address standing's prudential limitations. That is because a court analyzes prudential standing only after Article III standing is satisfied.[28] Nevertheless, in order to further demonstrate that Taya has no standing to enjoin the Debtor's use of the Images, the Debtor points out that Taya is seeking to enforce 5.11's rights in the Images, not her own. If 5.11 believes that the Debtor is using the Images inappropriately or has no right to use the Images, then 5.11 can litigate against the Debtor. But Taya has no business usurping 5.11's rights and claiming them as her own. For these reasons, Taya cannot satisfy the burden of proof regarding the prudential limitations on standing as well.

**C.     Taya Lacks Standing Under Texas Property Code § 26.005**

23.     If the property right under Chapter 26 of the Texas Property Code has not been transferred at or before the death of the person, if there is a surviving spouse and surviving children or grandchildren, one-half of the property right vests in the surviving spouse and the other one-half of the property right vests in the surviving children or grandchildren.[29] When Chris died, he had a surviving spouse, Taya, and two surviving children.[30] The property right under Texas Property Code § 26.005 is therefore split among more than one person.

24.     If the property right under Texas Property Code Chapter 26 is split among more than one person, those persons who own more than one-half of the interest in the aggregate may

---

[28]     Crane, 920 F.Supp.2d at 734.
[29]     Texas Property Code § 26.005(a)(2).
[30]     Complaint, ¶ 9, p. 3.

exercise the right on behalf of all persons who own the right.[31] That statutory provision is not complied with here. The plaintiff in the Complaint is Taya, and only Taya. But Taya has vested in her only one-half of the property right under Texas Property Code Chapter 26. Her children have the other one-half. The Complaint should have been filed by Taya and at least one of her children.[32] Because of this deficiency, Taya lacks standing to file the Complaint.

**D.      Taya Has No Cause of Action Under Chapter 26 of the Texas Property Code Regarding 5.11's Images that are on the Debtor's Website**

25.      Under Texas Property Code § 26.002, a person, such as Chris, has a property right in the use of that person's name, voice, signature, photograph, or likeness after his death (emphasis added). Texas Property Code § 26.003 states that Chapter 26 of the Texas Property Code applies to a person whose name, voice, signature, photograph, or likeness has commercial value at the time of his death or comes to have commercial value after that time. With Chris' status as a legendary Navy SEAL, his having written a *New York Times* bestselling autobiography, and with his extensive efforts at self-publicity, photographs of Chris may have had commercial value at the time of his death and thereafter.

26.      Texas Property Code § 26.004 makes clear, however, that this property right is freely transferable, in whole or in part, by contract or by means of trust or testamentary documents; and that this property right may be transferred before or after the person's death.[33] Chris freely transferred his property rights in the Images to 5.11 under the Release before his

---

31      Texas Property Code § 26.005(c).

32      Whitehurst v. Showtime Networks, Inc., 2009 WL 3052663 at * 9 E.D.Tex. 2009) ("Whitehurst") (" . . . it is undisputed that Mr. Whitehurst is not a majority owner of the transferred property rights, a requirement to bring suit to enforce or protect those rights under TEX. PROP.CODE § 26.005(c). Accordingly, his arguments are without merit as he attempts to claim his standing to sue. The Defendant has established that **Mr. Whitehurst does not have the requisite standing** as a majority owner of the rights to the decedent Byrd's name, voice, signature, photography or likeness under Chapter 26 of the Texas Property Code. Mr. Whitehurst therefore cannot state a claim for misappropriation of that likeness on behalf of the decedent, Mr. Byrd, because he lacks standing to do so. The motion to dismiss should also be granted in this regard.") (emphasis added).

33      See also, In re Jones, 445 B.R. 677, 726 (Bankr. N.D.Tex. 2011) ("Jones").

death. This transfer was in whole, not just in part. Under the exact wording of the Release, the Images were 5.11's exclusive property. Chris retained no rights to the Images. And because the pictures of Chris on the Debtor's website are all 5.11's Images, neither Chris, nor Taya have any right under Chapter 26 of the Texas Property Code regarding the Debtor's use of those Images.

27.     Texas Property Code § 26.011 describes the prohibited uses of a person's name, voice, signature, photograph, or likeness. Those prohibitions are conditioned on there not being the written consent of a person who may exercise that property right. Here, we have the written consent of the person, the only person, who could have exercised this property right at the time that he did. Chris signed the Release and freely transferred all of his rights in the Images to 5.11. This invalidates the claims in this Adversary Proceeding regarding the Images.

E.      **Taya Has No Cause of Action Under Chapter 26 of the Texas Property Code Regarding the Debtor's Use of Chris' Name and Images on the Debtor's Website Because Chris Was a Public Figure Whose Life Story Was in the Public Domain due to His Own Extensive Self-Publicizing Activities**

28.     In arriving at the definition of a public figure, courts have described public figures as people who "have assumed roles of especial prominence in the affairs of society," "occupy positions of such persuasive power and influence," "thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved," "invite attention and comment," one who has "relinquished . . . [his or her] interest in the protection of [his or her] own good name," are "intimately involved in the resolution of important public questions, or, by reason of their fame, shape events in areas of concern to society at large."[34]

---

[34]     San Antonio Express News v. Dracos, 922 S.W.2d 242, 251 (Tex.App.-San Antonio 1996, no writ) ("San Antonio"), citing Gertz v. Robert Welch, Inc., 418 U.S. 323, 345 (1974) ("Gertz"). Hutchinson v. Proxmire, 443 U.S. 111, 134 (1979). Braun v. Flynt, 726 F.2d 245, 249 (5ᵗʰ Cir. 1984), cert. denied, 469 U.S. 883 (1984) ("Braun"), citing Curtis Publishing Co. v. Butts, 388 U.S. 130, 164 (1967) (Warren, C.J., concurring in result).

29.    Public figures are classified into two categories (in addition to government officials): general purpose and limited purpose public figures. General purpose public figures are people who "achieve such pervasive fame or notoriety that [they] become a public figure for all purposes and in all contexts," or "assumed so prominent a role in the affairs of society that they have become celebrities."[35] "Absent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life."[36]

30.    A limited purpose public figure attains that status by "thrust[ing] themselves to the forefront of particular controversies in order to influence the resolution of the issues involved,"[37] or because they "voluntarily inject [themselves] or [are] drawn into a particular public controversy." Either way, they obtain a special prominence in the resolution of public questions.[38]

31.    Whether a person is a public figure is a question of law for the court to decide.[39] The test is not so straightforward, and judges may have to rely on Justice Potter Stewart's remark regarding obscenity: "I know it when I see it."[40]

32.    As Taya readily admits multiple times in the State Court Petition, Chris was a legend. In addition to his exploits on the battlefield and all of the commendations and medals he was awarded, military and otherwise, his legendary status was further perpetuated by his authoring his *New York Times* bestselling autobiography and self-publicizing that book in a multitude of television and radio appearances, newspaper and magazine interviews, and book

---

[35]    San Antonio, 922 S.W.2d at 251, citing Gertz, 418 U.S. at 323; and Tavoulareas v. Piro, 817 F.2d 762, 772 (D.D.C. 1987), cert. denied, 484 U.S. 870 (1987).
[36]    San Antonio, 922 S.W.2d at 251, citing Gertz, 418 U.S. at 352.
[37]    San Antonio, 922 S.W.2d at 251, citing Gertz, 418 U.S. at 345.
[38]    San Antonio, 922 S.W.2d at 251, citing Gertz, 418 U.S. at 353.
[39]    San Antonio, 922 S.W.2d at 251, citing Rosenblatt v. Baer, 383 U.S. 75, 88 (1966).
[40]    San Antonio, 922 S.W.2d at 251, citing Jacobellis v. Ohio, 378 U.S. 184, 197 (1964).

signing appearances.  By doing this, Chris enhanced his fame and notoriety.  He became a

celebrity.  And in so doing, he became a public figure.  There are many cases of authors and

journalists on this point.[41]

33.  *American Sniper* put Chris' life story and the derivation of the Debtor's skull logo

in the public domain.  There is no claim for the misappropriation of a person's life story.[42]  There

can be no liability for misappropriation when the information is in the public domain because the

---

[41]  See <u>San Antonio</u>, 922 S.W.2d at 252-253, citing <u>Falls v. Sporting News Publishing Co.</u>, 714 F.Supp. 843, 847 (E.D.Mich. 1989, affirmed without opinion, 899 F.2d 1221 (6th Cir. 1999) (Sports columnist who made radio, television, and speaking appearances was a public figure "with regard to his sports writing activities"); <u>Loeb v. Globe Newspaper Co.</u>, 489 F.Supp. 481, 485-486 (D.Mass. 1980) (Newspaper publisher's description of himself as "'a publisher who regularly takes strong stands on controversial issues . . . [and who] invites expression of contrary opinion'" "neatly fits the Supreme Court's recent definition of public figures: '[those who] have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved . . . [and who] invite attention and comment'"); <u>Loeb v. New York Times Communications Corp.</u>, 497 F.Supp. 85, 88 (S.D.N.Y. 1098) (Same newspaper publisher's "outspoken criticism of prominent politicians and celebrities in diverse fields has frequently made him the target of national and regional media coverage"); <u>Adler v. Conde Nast Publications, Inc.</u>, 643 F.Supp. 1558, 1564 (S.D.N.Y. 1986) ("We find that Adler's general fame or notoriety in the literary and journalistic community and her pervasive involvement in the affairs of society render her a public figure with regard to activities relating to literature, journalism and criticism"); <u>O'Donnell v. CBS, Inc.</u>, 782 F.2d 1414, 1417 (7th Cir. 1986) (Vice president and general manager of radio station who used his editorial position to advocate a particular point of view regarding an EPA controversy became a limited purpose public figure with respect to that controversy, including comment upon his being fired from the position through which he sought to influence the controversy); <u>Lerman v. Flynt Distributing Co., Inc.</u>, 745 F.2d 123, 137 (2nd Cir. 1984), <u>cert.</u> denied, 471 U.S. 1054 (1985) (Author of nine novels who waged "organized and ongoing effort to maintain media access in order to call attention to her writings and disseminate her views" was limited purpose public figure with respect to statements about her involvement in writing books and plays); <u>Stolz v. KSFM 102 FM</u>, 30 Cal.App.4th 195,35 Cal.Rptr.2d 740, 745-746 (1994), <u>cert.</u> denied, 516 U.S. 820 (1995) (Owner, operator and general manager of Sacramento radio station was general purpose public figure "by virtue of occupying a position of general fame and pervasive power and influence in the community," ability "to reach a wide audience," selection and presentation of public affairs programs and voluntary exposure to public scrutiny); <u>Knudson v. Kansas Gas and Electric Co.</u>, 248 Kan. 469, 807 P.2d 71, 78 (1991) (Free-lance journalist's story on local utility, published in the Kansas City Star, written in an "investigatory tone to create a public controversy," transformed him into a public figure because he "voluntarily injected himself into the public's attention); <u>Rybachek v. Sutton</u>, 761 P.2d 1013, 1014 (Alaska 1988) (Biweekly columnist who used her column to express her views on mining and natural resources issues was a public figure with respect to her columns); <u>Warner v. Kansas City Star Co.</u>, 726 S.W.2d 384, 385 (Mo.Ct.App. 1987) (Outdoor editor of Kansas City Newspaper who had "regularly written prominently featured articles for the outdoor section of the newspaper, of which he was identified, by name and title, as the author," and who received numerous journalistic awards and "invited public attention to himself and to his views," was a public figure for purposes of an article concerning his discharge for alleged conflict of interest violations).

[42]  <u>Whitehurst</u>, 2009 WL 3052663 at * 6.  <u>Matthews v. Wozencraft</u>, 15 F.3d 432, 437 (5th Cir. 1994) ("<u>Matthews</u>").

public figure ceases to have the right to control the dissemination of the information.[43]  There are several cases directly on point.

34.    In Matthews, a former undercover narcotics officer filed suit for, among other things, misappropriation and invasion of privacy against his former wife and partner, and misappropriation and invasion of privacy against the publisher of his former wife's book, and the movie studio which filmed an account of that book in the movie *Rush*.  The court held that a life story was not a name or likeness under Texas misappropriation law.  Under the facts of that case, in the time since the plaintiff participated in the subject Tyler, Texas drug investigation and his later conviction and prison time for his illegal activity, the plaintiff "voluntarily submitted to numerous interviews with the national media.  He also cooperated in the publication of SMITH COUNTY JUSTICE and testified about his activities in Hardy's criminal trial.  All of the facts underlying RUSH were a matter of public knowledge and were in the public domain."[44]

35.    As a result of the plaintiff's own conduct, he became a public figure.  The subject matter of his statements had become a matter of public interest.[45]  And since all of the events were a part of the public domain, the defendants were allowed to their fair use, and include their narration in fictionalized form.[46]

36.    There are very few references to Chris on the Debtor's website, and each reference is short.  There is the mention that Chris co-founded the Debtor, wrote *American Sniper*, and how certain events in Chris' life were incorporated into the Debtor's skull logo.  All

---

[43]    Matthews, 15 F.3d at 440, citing Corabi v. Curtis Publishing Co., 441 Pa. 432, 273 A.2d 899, 919 (1971) ("[A] public figure has no exclusive rights to his or her own life story . . . such life story of the public figure may legitimately extend, to some reasonable degree, to  . . . information concerning the individual, and to facts about him, which are not public . . ."). Busch v. Viacom International, Inc., 477 F.Supp.2d 764, 776-777 (N.D.Tex. 2007).

[44]    Matthews, 15 F.3d at 440.

[45]    Matthews, 15 F.3d at 440, citing Trotter v. Jack Anderson Enters., 818 F.2d 431, 434 (5th Cir. 1987).

[46]    Matthews, 15 F.3d at 440-441.

**HEARING BRIEF REGARDING TAYA KYLE'S REQUEST FOR**
**PRELIMINARY INJUNCTIVE RELIEF – Page 14**

of that information is already in the public domain because of Chris writing *American Sniper* and publicizing it. As a result, the Debtor can use that information in its website.

37.     A second case directly on point is O'Brien v. Pabst Sales Co.[47] That case involved Davey O'Brien ("O'Brien"), the quarterback of the Texas Christian University ("TCU") football team. In 1938, he was chosen to be on Collier's All American Football Team. Pabst, a beer distributor, as a part of its advertising publicity in 1939, had a printing company create 39,000 football calendars. These calendars contained, among other things, pictures of the All American Football Team.[48]

38.     At the top of the calendar were the words "Pabst Blue Ribbon" Underneath were the words "Football Calendar, 1939." To the left of these words was an action photograph of O'Brien. On the right hand side of the words was a glass having on it the words "Pabst Breweries, Blue Ribbon Export Beer." To the right of the glass was a bottle of beer with the words "Pabst Blue Ribbon Beer." Directly below was the inter-collegiate football schedule for 1939, and in the center of the calendar were pictures of Collier's All American Football Team, including one of O'Brien. Near the bottom was the schedule of the national football league and on the very bottom margin were the words "Pabst Famous Blue Ribbon Beer."[49] O'Brien sued Pabst for invasion of the right of privacy, but he lost.

39.     Pabst asserted several defenses: O'Brien was a public person due to his athletic prowess; he had consented to publicity by posing for and agreeing to the distribution of pictures and having his biographical information printed in newspapers, magazines and sports journals. The facts showed that O'Brien had played collegiate football for 4 years and professional

---

[47]     124 F.2d 167 (5th Cir. 1942) ("O'Brien"), cert. denied, 315 U.S. 823 (1942).
[48]     Id., at 168.
[49]     Id., at 168.

football for 2 years. He received many outstanding honors and accolades. O'Brien did not give his permission for Pabst to use his picture. He was a member of the Allied Youth of America, whose primary issue was doing away with alcohol for young people. He had opportunities to sell his endorsement for beer and alcohol and had turned them down. O'Brien claimed that he was greatly embarrassed and humiliated by his picture on the calendar because it looked like his name and face were associated with the sale of beer. O'Brien also testified that he had frequently posed for pictures for use in publicizing himself and TCU, that TCU distributed pictures of O'Brien to people, periodicals and magazines. Pabst had actually purchased its picture of O'Brien from TCU.[50]

40.     The District Court held for Pabst, pointing out that O'Brien was an outstanding national football player who had completely publicized his own name and photographs, and that the information about O'Brien in the calendar was true. Nothing in the calendar about O'Brien, not the pictures nor the words, showed that O'Brien was a beer drinker or was an endorsement for Pabst's beer.[51] The Fifth Circuit affirmed the lower court, pointing out that O'Brien was not a private person and was getting the kind of publicity that he had been constantly seeking and receiving.[52]

41.     O'Brien and Chris each had their own prowess. While O'Brien was a legend on the football field, Chris was a legendary Navy SEAL sniper. Both men intentionally publicized the living daylights out of their accomplishments. Chris wrote *American Sniper* and conducted interviews on the television and radio, was interviewed by newspapers and magazines, attended book signings and posed for pictures with fans. The publicity that he got by having his name on

---

[50]     Id., at 169.
[51]     Id., at 169.
[52]     Id., at 170.

HEARING BRIEF REGARDING TAYA KYLE'S REQUEST FOR
PRELIMINARY INJUNCTIVE RELIEF – Page 16

80686v.2

the Debtor's website is the publicity that he had been constantly seeking and receiving. Furthermore, nothing on the Debtor's website where Chris' name is mentioned is untrue. It is also important to point out the important distinction that whereas O'Brien's picture was next to an advertisement for Pabst's beer, no information about Chris appears on the Debtor's website next to any merchandise that the Debtor is selling or in the description of any of the training classes that the Debtor provides.

**F.      In the Alternative, the Debtor did not Misappropriate Chris' Name, Likeness and Image under Chapter 26 of the Texas Property Code**

42.      Under Texas Property Code § 26.011, without the written consent of a person who may exercise the property right (which the Debtor has for the Images), a deceased person's name, voice, signature, photograph, or likeness may not be used in any manner including: (a) in connection with products, merchandise, or goods; and (b) for the purpose of advertising, selling, or soliciting the purchase of products, merchandise, goods or services. A *prima facie* case requires 2 things: the defendant has appropriated another's identity and is using it for trade or commercial benefit.[53]  Essentially, what this means is that appropriation becomes actionable when "it is used to advertise the defendant's business or product, or for some similar commercial purpose."[54]

43.      There aren't a lot of cases that discuss the application of Chapter 26 of the Texas Property Code.  There are more cases that discuss the application of the analogous common law tort of invasion of privacy/misappropriation.  "One who appropriates to his own use or benefit

---

[53]      Elvis Presley Enterprises, Inc. v. Capece, 950 F.Supp. 783, 801 (S.D.Tex. 1996) ("Elvis I"), reversed and remanded on other grounds, 141 F.3d 188 (5th Cir. 1998) ("Elvis II"), citing Matthews, 15 F.3d at 437.

[54]      Elvis I, 950 F.Supp. at 801.  Matthews, 15 F.3d at 437.

**HEARING BRIEF REGARDING TAYA KYLE'S REQUEST FOR**
**PRELIMINARY INJUNCTIVE RELIEF – Page 17**

80686v.2

the name or likeness of another is subject to liability to the other for invasion of privacy."[55]  The following three factors must be proven:  (a) the defendant appropriated the plaintiff's name or likeness for the value associated with it, and **not for an incidental manner** or for a newsworthy purpose; (b) the plaintiff can be identified from the publication; and (c) there was some advantage or benefit to the defendant.[56]

44.    There is no question that Chris' name appears on the Debtor's website.  But his name does not appear on any part of the Debtor's website where Craft merchandise is sold or where there is a description of any of Craft's training classes.  Craft mentions that Chris was a co-founder, that he wrote *American Sniper*, and that certain events in his life were incorporated into the Debtor's skull logo.  These are all incidental uses of his name.

45.    Contrast this case with Henley.  There, the plaintiff was (and still is) a guitarist and co-founder of the rock and roll band *The Eagles*.  Dillard Department stores ran a newspaper advertisement for a shirt called the "henley."  The ad showed a picture of a man wearing a henley shirt with the words "This is Don" in large print next to the picture, and an arrow pointing toward the man's head from the words.  Underneath the words is the statement "This is Don henley" in the same size print, with a second arrow pointing to the shirt.  The ad had the name of the store, pricing, size and manufacturer information.  The ad also said "Sometimes Don tucks it in; other times he wears it loose-it looks great either way.  Don loves his henley; you will too."[57]  Henley sued Dillard for invasion of privacy and won.

---

[55]    Matthews, 15 F.3d at 437, citing Restatement (Second) of Torts §652C; and Kimbrough v. Coca Cola/USA, 521 S.W.2d 719, 722 (Tex.Civ.App.-Eastland 1975, writ ref'd n.r.e.).  Whitehurst, 2009 WL 3052663 at * 5.

[56]    Whitehurst, 2009 WL 3052663 at * 6 (emphasis added).  Matthews, 15 F.3d at 437.  Henley v. Dillard Department Stores, 46 F.Supp.2d 587, 590 (N.D.Tex. 1999) ("Henley").  Busch, 477 F.Supp.2d at 776.

[57]    Henley, 46 F.Supp.2d at 589.

46. In this case, there is no use of Chris' name with any description of the merchandise that the Debtor is selling. The Debtor is not saying that Chris wore the merchandise or that he endorsed it. In addition, Chris' name does not appear in any of the descriptions of the Debtor's training classes. Chris' name is conspicuous by its absence. The Debtor is not using Chris' name to sell its merchandise, training classes or anything else. Chris' name is only used in an incidental manner.

47. There is no liability for an incidental use because an incidental use has no commercial value, and to allow recovery to anyone briefly depicted or referred to would unduly burden expressive conduct.[58] A person's name is not appropriated just by mentioning the name.[59] There is also no actionable appropriation when the person's name is "published for purposes other than taking advantage of his reputation, prestige, or other value associated with him."[60]

48. Whether the incidental use exception applies is determined by the role that the use plays concerning the entire publication.[61] The incidental use exception has four factors: (a) whether the use has a unique quality or value that would result in commercial profit to the defendant; (b) whether the use contributes something of significance; (c) the relationship between the reference to the person and the purpose and subject of the work; and (d) the duration, prominence or repetition of the likeness relative to the rest of the publication.[62]

---

[58]     Yeager v. Cingular Wireless LLC, 673 F.Supp.2d 1089, 1100 (E.D.Cal. 2009) ("Yeager"). Pooley v. National Hole-In-One Association, 89 F.Supp.2d 1108, 1112 (D.Ariz. 2000) ("Pooley"). Aligo v. Time-Life Books, Inc., 1994 WL 715605 at * 2 (N.D.Cal. 1994) ("Aligo"), citing Preston v. Martin Bregman Productions,Inc., 765 F.Supp. 116, 120 (S.D.N.Y. 1991) ("Preston").
[59]     Yeager, 673 F.Supp.2d at 1100, citing Restatement (Second) of Torts § 652C, comment d.
[60]     Id.
[61]     Pooley, 89 F.Supp.2d at 1112, citing Ladany v. William Morrow & Co., 465 F.Supp. 870, 882 (S.D.N.Y. 1978 ("Ladany"). Aligo, 1994 WL 715605 at * 2, citing Ladany.
[62]     Yeager, 673 F.Supp.2d at 1100 Pooley, 89 F.Supp.2d at 1113. Aligo, 1994 WL 715605 at * 3.

49.     In <u>Namath v. Sports Illustrated</u>,[63] the plaintiff, the New York Jets quarterback that helped his team win Super Bowl III, sued the defendant magazine because the magazine used a picture of him without his consent. The picture was first used by the magazine, with the plaintiff's consent, in an article about Super Bowl III. Later, the same picture was used in an advertisement to promote subscriptions.[64] The court ruled that the use of the plaintiff's picture was incidental since it was used to advertise the quality and content of the periodical.[65]

50.     Similarly, in <u>Vinci v. American Can Company</u>,[66] an Olympic weightlifter brought an action for invasion of privacy for the use of his name and likeness and those of other Olympic athletes on a series of promotional disposable drinking cups, sold as Dixie Cups. The court held that the mention of the athletes' names in the context of accurate, historical information was incidental to the promotion of the Dixie Cups. The reference to the athletes was just informational. There was no implication that the athletes used or endorsed the product.[67]

51.     The incidental use exception applies here. Again, it is true that pictures of Chris are on the Debtor's website. But his name does not appear next to his pictures. Chris is just modeling 5.11's clothing in various action poses, and the Debtor has 5.11's permission to use those pictures. The mention of Chris' name is not used to sell 5.11's clothing, nor is it used to sell the Debtor's merchandise. Chris' name is used in connection explaining the founding of the Debtor and the Debtor's skull logo: that is all. There is really no prominence or repetition in the use of Chris' name or the pictures of Chris on the Debtor's website.

---

[63]     48 A.D.2d 487, 371 N.Y.S.2d 10 (N.Y.A.D. 1st Dept. 1975) ("<u>Namath</u>").
[64]     <u>Id.</u>, at 488.
[65]     <u>Id.</u>
[66]     69 Ohio App.3d 727, 591 N.E.2d 793 (Ohio App. 8th Dist. 1990) ("<u>Vinci</u>").
[67]     <u>Id.</u>, at 728-729.

### G.    Taya Is Not Entitled to Injunctive Relief

52.    In order to obtain injunctive relief in the Fifth Circuit, the following factors must be met:  (a) whether the movant has shown a reasonable probability of success on the merits;  (b) whether the movant will be irreparably injured by denial of the relief;  (c) whether granting preliminary relief will result in even greater harm to the non-moving party; and (d) whether granting the preliminary relief will be in the public interest.[68]  Taya cannot prove any of those factors.

53.    Taya will not succeed on the merits of her Complaint.  She does not own the pictures of Chris that appear on the Debtor's website.  Those pictures belong to 5.11, and the Debtor has 5.11's consent to use them.  The mention of Chris' name on the Debtor's website is not actionable because Chris was a public figure who intentionally inserted himself into the limelight, and whose life story was a part of the public domain.  Any use of Chris' pictures or name is an incidental use.

54.    Taya has not shown any irreparable injury.  The use of Chris' name and pictures on the Debtor's website was the use that Chris agreed to before he died.  It was just more of the same publicity that he was seeking in every aspect of the media.  Granting injunctive relief in favor of Taya will inflict far more damage to the Debtor than if her requested injunctive relief is denied.  The Debtor is a debtor in possession whose success in business was gutted by Taya filing the State Court Action.  She is using litigation in the State Court Action and this Adversary Proceeding to attempt to bludgeon the Debtor into submission.  On the other hand, Taya is reaping the rewards of Chris's literary success.  Upon information and belief, although Chris had said that his publishing royalty checks would go to support the families of soldiers that had been

---

[68]    Matter of Commonwealth Oil Refining Co., Inc., 805 F.2d 1175, 1188-1189 (5th Cir. 1986), cert. denied, 483 U.S. 1005 (1987).

killed in combat, Taya has not honored his promise and has kept most of that money for herself. The public interest will be furthered by denying Taya's requested injunctive relief. She has not shown herself entitled to injunctive relief. Instead, she has used her role as a grieving widow in substitution for legal merit, in the hope that emotion will triumph over and trump all else. Finally, there is an adequate remedy at law: damages. In fact, Taya asks for damages in her Complaint, so she is well aware of the existence of that legal remedy.

**IV.**    **Conclusion**

55.    Plain and simple, Taya is not entitled to any of the relief that she requested in the Complaint, and no injunctive relief should be awarded to her.

**V.**    **Prayer**

The Debtor prays that this Court refuse to award Taya any injunctive relief, preliminary or otherwise and that this Court award the Debtor such other and further relief, special or general, at law or in equity, as this Court may deem just and proper.

Dated:  September 29, 2014                    Respectfully submitted,


                                             **NELIGAN FOLEY LLP**

                                             By:

                                             */s/ Patrick J. Neligan, Jr.*
                                                     Patrick J. Neligan, Jr.
                                                     Texas State Bar No. 14866000
                                                     pneligan@neliganlaw.com
                                                     Seymour Roberts, Jr.
                                                     Texas State Bar No. 17019150
                                                     sroberts@neliganlaw.com

                                             325 N. St. Paul, Suite 3600
                                             Dallas, Texas  75201
                                             Telephone:  (214) 840-5300
                                             Facsimile:  (214) 840-5301

                                             **COUNSEL FOR THE DEBTOR**

### Certificate of Service

I hereby certify that on the 29th day of September, 2014 a true and correct copy of the foregoing was served via the Court's ECF notification system.


                                             */s/    Seymour Roberts, Jr.*
                                                     Seymour Roberts, Jr.